**UNITED STATES of America,**
**Appellee,**

v.

**Martici L. TAYLOR, Defendant–**
**Appellant.**

**Docket No. 05–6764–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 14, 2006.
Decided: Jan. 23, 2007.

Mary K. Barr, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, on brief) for Appellee.

Darrell B. Fields, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, for Defendant–Appellant.

Before CALABRESI, WESLEY, Circuit Judges, and RAKOFF, District Judge.*

PER CURIAM.

Martici Taylor appeals from a sentence entered December 7, 2005 in the United States District Court for the Eastern District of New York (Amon, *J.*) following his jury trial conviction for unlawful possession of a firearm, 18 U.S.C. § 922(g). Taylor was sentenced to sixty-six months' imprisonment and three years of supervised release, and required to pay a $100 assessment.

Taylor's appeal does not contest his conviction. He directs our attention instead to the sentence imposed, arguing the district court erred by failing to grant an acceptance of responsibility adjustment under the federal sentencing guidelines (the "Guidelines"), U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a). Taylor contends the district court denied the adjustment based solely on his assertion of an entrapment defense at trial.

The facts underlying Taylor's conviction are uncontested. Law enforcement agents, with the help of Taylor's cousin, arranged a rendezvous with Taylor in a parking lot to exchange crack cocaine and cash for ten firearms. Undercover agents completed the transaction and then arrested Taylor and his accomplice. Taylor later met with officials from the Bureau of Alcohol Tobacco and Firearms, explaining to them that the transaction occurred because he needed to "make some quick money."

Taylor presented an entrapment defense at trial. He testified that the firearm exchange only occurred because of his concern for his cousin, who suffered from sickle-cell anemia and needed money. The government presented a videotape of the transaction and a government witness testified to Taylor's predisposition to buy the guns, recalling how Taylor traded marihuana for guns in the past. After two days of deliberation, the jury rejected Taylor's defense and returned a guilty verdict.[1]

The presentence report calculated Taylor's Guidelines range at 63 to 78 months' imprisonment. Taylor had a Criminal History Category of III and a base offense level of 24. The offense level was based on Taylor's prior drug conviction, U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A), and the ten firearms purchased, *id.* § 2K2.1(b)(1)(B). The report recommended against an acceptance of responsibility adjustment, due to Taylor's conviction at trial and his refusal to comment on the offense during the presentence interview. Ultimately, the report called for a sentence exceeding the Guidelines range given Taylor's two previous drug convictions and the fact that Taylor committed the instant offense while on parole.

Taylor's attorney first requested an acceptance of responsibility adjustment a

---

* The Honorable Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation.

1. Defense counsel did not request, nor did the district court submit, interrogatories to the jury, asking whether they had found inducement, and if so, whether they had also found predisposition. *See United States v. Dunn,* 779 F.2d 157, 158 (2d Cir.1985).

week before the initial sentencing hearing. He suggested Taylor's decision not to contest the material facts of the transaction amounted to an acceptance of responsibility. However, Taylor's attorney insisted upon Taylor's denial of guilt at the sentencing hearing, arguing Taylor "still sees [sic] saw it then and probably will always see it as entrapment." Taylor's attorney then emphasized that Taylor made an offer to assist the police in obtaining crack cocaine several weeks before sentencing, an effort the government characterized as "too little, too late." The district court indicated its reluctance to grant an adjustment for acceptance of responsibility:

> I think that decision could have been reached prior to the trial. I thought there was ample time for that, to have been reached prior to the trial. The problem with acceptance of responsibility is, I mean, the entrapment defense did the equivalent of denying intent in a way and I don't know how you get acceptance of responsibility under those circumstances ... this was a case in which it's [sic] could have hardly been stronger. He's on tape, they're in the parking lot of Costco's, there are a bunch of agents here.

At the second sentencing hearing, the district court confirmed its decision to deny the acceptance of responsibility adjustment:

> I don't think that acceptance of responsibility has been made out. Entrapment is the defense. It's a defense in a way to the intent element of committing the crime. There was a trial here. I don't think this is one of those unusual cases in which one could say that Mr. Taylor

truly accepted responsibility, as that is meant under the guideline.

The district court proceeded to sentence Taylor to a term of sixty-six months' imprisonment, the bottom end of the Guidelines range. This appeal followed.

■ Ordinarily, a district court's decision not to grant a defendant a section 3E1.1 adjustment is "entitled to great deference on review." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n. 5. "Whether the defendant has accepted responsibility is a factual question, and '[a] district court's determination in this regard should not be disturbed unless it is 'without foundation.'" *United States v. Harris*, 13 F.3d 555, 557 (2d Cir.1994) (internal citations omitted). But this case presents an unusual situation: The district court's section 3E1.1 decision could be seen as resting in part on a legal conclusion that entrapment is a denial of the intent required for a section 922(g) conviction.[2] Indeed, Taylor presses that the court below based its denial of the adjustment as a matter of law. Were that the case, we would review this legal conclusion *de novo*. See *United States v. Rodriguez*, 928 F.2d 65, 67 (2d Cir.1991) (holding that "to the extent that an application of the Guidelines is influenced by a mistaken view of the law, our review is plenary").

■ Mindful that "[a]n error in determining the applicable Guideline range ... would be the type of procedural error that could render a sentence unreasonable," *United States v. Selioutsky*, 409 F.3d 114, 118 (2d Cir.2005), after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we conclude no such error occurred in this case. We reach this conclusion because we believe that the dis-

---

**2.** A conviction under 18 U.S.C. § 922(g) requires proof beyond a reasonable doubt that the defendant knowingly and intentionally possessed a firearm in and affecting commerce after previously having been convicted of a felony. *United States v. Slaughter*, 386 F.3d 401, 402 (2d Cir.2004).

trict court based its ultimate determination—that Taylor failed to accept responsibility—on factual grounds rather than on the allegedly erroneous view of entrapment as a denial of criminal intent.

A defendant may receive a downward adjustment under the Guidelines "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense . . . ." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a). The commentary to section 3E1.1 enumerates a number of factors to take into account when deciding whether to grant the adjustment, including whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction," and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.* § 3E1.1 cmt. n. 1(a) & (h).[3] The commentary indicates that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* § 3E1.1 cmt. n. 2. But going to trial does not necessarily foreclose the acceptance of responsibility adjustment:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be

based primarily upon pre-trial statements and conduct.

*Id.* While easily understood and applied in most cases, a difficult question arises when a defendant raises an entrapment defense at trial, suffers conviction, and then seeks an adjustment for acceptance of responsibility at sentencing.

 "Entrapment is an affirmative defense that requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime. . . ." *United States v. Williams,* 23 F.3d 629, 635 (2d Cir.1994). The defense lacks a constitutional dimension; instead it is a creature of statutory construction based on "the notion that Congress could not have intended criminal punishment for a defendant who has committed all elements of a proscribed offense but was induced to commit them by the Government." *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). If a defendant sustains his burden of proving inducement, the government may defeat the defense of entrapment with proof of predisposition to commit the crime. *United States v. Brand,* 467 F.3d 179, 189 (2d Cir.2006). Predisposition focuses on the source of the criminal intent: whether the government placed the criminal intent in the defendant. *See Jacobson v. United States,* 503 U.S. 540, 548, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

 Proof of predisposition is no surrogate for the intent that must be established under section 922(g). *Cf. Mathews v. United States,* 485 U.S. 58, 65, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (holding defendant may challenge the intent element of

---

**3.** Both the commentary notes and the actual Guidelines provision control a district court's decision to grant a section 3E1.1 adjustment. *United States v. Castano,* 999 F.2d 615, 617 (2d Cir.1993) (citing *Stinson v. United States,* 508 U.S. 36, 44–46, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding notes are binding unless clearly erroneous or contradicted by Guidelines)).

the crime charged and assert that the intent was the result of government inducement). Confusion may exist, however, because the proof used to establish predisposition can be the same proof used to establish intent. *Brand,* 467 F.3d at 200. Or perhaps the difference between the two becomes muddled due to the government's burden of proof: Once a defendant produces sufficient evidence of inducement, the government must prove both the defendant's predisposition, *United States v. Swiderski,* 539 F.2d 854, 857 (2d Cir.1976), and his intent, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), beyond a reasonable doubt. It bears emphasizing that no matter how intertwined intent and predisposition may be, they remain separate concepts. *See Brand,* 467 F.3d at 200.

■ The question of whether a defendant who raises an entrapment defense is precluded as a matter of law from receiving an acceptance of responsibility adjustment has bedeviled our sister circuits. *Compare United States v. Garcia,* 182 F.3d 1165 (10th Cir.1999) (entrapment defense does not bar defendant from seeking acceptance of responsibility adjustment as matter of law);[4] *Joiner v. United States,* 103 F.3d 961 (11th Cir.1997) (same); *United States v. Ing,* 70 F.3d 553 (9th Cir.1995) (same); *United States v. Fleener,* 900 F.2d 914 (6th Cir.1990) (same) *with United States v. Chevre,* 146 F.3d 622 (8th Cir. 1998) (entrapment defense *per se* incompatible with acceptance of responsibility adjustment); *United States v. Brace,* 145 F.3d 247 (5th Cir.1998) (en banc) (same); *with United States v. Kirkland,* 104 F.3d 1403 (D.C.Cir.1997) (indicating general in-

compatibility of entrapment defense with acceptance of responsibility adjustment); *United States v. Demes,* 941 F.2d 220 (3d Cir.1991) (same). If the district court's denial of the acceptance of responsibility adjustment hinged solely on this point, we would be squarely confronted with the issue. However, it is clear the district court relied on the particular facts of Taylor's case to deny the adjustment. Accordingly, we view the district court's conclusion as a factual one, which we will reverse only if "without foundation." *United States v. Hirsch,* 239 F.3d 221, 226 (2d Cir.2001) (internal citation and quotation marks omitted).

■ The record establishes that the district court appropriately denied Taylor an acceptance of responsibility adjustment. *Cf. United States v. Manas,* 272 F.3d 159, 167 (2d Cir.2001) ("[P]articularized findings are unnecessary where the sentencing court speaks generally to the pertinent considerations and the specific facts are apparent from the record."). Because Taylor put the government to its burden of proof at trial, the acceptance of responsibility adjustment "will be based primarily upon pre-trial statements and conduct." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. 2. The district court noted that Taylor had "ample time" pre-trial to accept responsibility, yet he failed to make any effort to do so. Taylor even refused to speak about his criminal conduct with the probation department during his presentence interview, leading the probation department to exclude an acceptance of responsibility adjustment from its report. Indeed, Taylor's only ef-

---

4. Some courts have precluded the adjustment by characterizing entrapment as the quintessential denial of intent, *i.e.,* "the devil made me do it." Other courts have allowed the adjustment, viewing entrapment as "a challenge to the applicability of a statute,"

§ 3E1.1(a) cmt. n. 2. While each position has its merits, perhaps an examination of the context of the entrapment defense under review would be of use in determining whether to grant the adjustment.

fort came a week before sentencing, when he suggested that his refusal to contest the material facts of his conviction sufficed as an acceptance of responsibility. The district court also examined Taylor's credibility in accepting responsibility, noting the weakness of Taylor's entrapment defense at trial and observing that the evidence against him could not have been stronger. The district court was in the best position to observe Taylor's demeanor and lack of contrition at trial and sentencing. *See United States v. Fernandez,* 127 F.3d 277, 285 (2d Cir.1997). Accordingly, the district court's conclusion that this was not one of those "unusual cases in which Mr. Taylor truly accepted responsibility, as that is meant under the [G]uideline," was well within its discretion.

The judgment of the district court is AFFIRMED.