24-940
*United States v. Smith*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10ᵗʰ day of March, two thousand twenty-five.

PRESENT:
   REENA RAGGI,
   BETH ROBINSON,
   ALISON J. NATHAN,
     *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

   *Appellee,*

    v.         No. 24-940

DARREN SMITH,

   *Defendant-Appellant.*

———————————————————————

FOR APPELLANT:      LANCE A. CLARKE (Ethan Van Buren, *on the brief)*, Hamilton Clarke, LLP, New York, NY.

FOR APPELLEE: JAMES LIGTENBERG (Shiva H. Logarajah, Kevin T. Sullivan, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a criminal judgment entered in the United States District Court for the Southern District of New York (Halpern, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 3, 2024, is **AFFIRMED.**

Defendant-Appellant Darren Smith, stands convicted following a jury trial of (1) assaulting, resisting, or interfering with a designated federal officer in or on account of the performance of his official duties, *see* 18 U.S.C. §§ 111(a)(1), 111(b), and 1114 ("Count Two"); (2) using a firearm in relation to a crime of violence, *see id.* § 924(c) ("Count Three"); and (3) being a felon in possession of a firearm, *see id.* § 922(g)(1) ("Count Four").[1] He challenges his sentence to an aggregate 230 months of imprisonment as both procedurally and substantively unreasonable.

---

[1] Count One charged Smith with the attempted murder of a federal officer. *See* 18 U.S.C. § 1114(3). When the jury was unable to reach a verdict on that count, the district court declared a mistrial and subsequently dismissed the charge.

We review such challenges under "a particularly deferential form of abuse-of-discretion review." *United States v. Davis*, 82 F.4th 190, 195–96 (2d Cir. 2023).[2] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In September 2020, when two Yonkers police officers attempted to stop Smith for traffic violations, he drove off at a "high rate of speed," twice driving against the flow of oncoming traffic. App'x 132:12–16. Smith eventually got out of his car and fled on foot with a gun in his hand. Several uniformed and plainclothes officers in pursuit shouted at Smith to drop the gun. One pursuing plainclothes officer, Yonkers Detective Brian Menton, had been federally "deputized to perform the same duties as an FBI Special Agent." Presentence Investigation Report ¶ 10; *see also* App'x 148:7–7.

Smith initially ignored the officers' commands and kept running with the gun in his hand. Eventually, a uniformed officer tackled Smith to the ground, and other officers, including Menton, came to help subdue Smith. As the officers

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

tried to secure his gun, Smith began firing it. Menton then grabbed the gun on its side and pushed it down to the ground, at which point Smith fired it again in the direction of numerous citizens and officers.

By the time Menton took the gun from Smith's hands, Smith had fired his weapon five times. In the encounter, Menton injured his hand and sprained his knee.

## I.     Procedural Reasonableness

A district court commits "procedural error" if it improperly calculates the Sentencing Guidelines range, treats the Guidelines as mandatory, or fails to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007); *see United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013).

### A.     Official Victim Enhancement, U.S.S.G. § 3A1.2

Sentencing Guideline § 3A1.2(b) ("Official Victim" enhancement) instructs courts to apply a six-level enhancement if the victim of the crime was "a government officer or employee" and "the offense of conviction"—here, the assault underlying Count Two—was "motivated by such status." U.S.S.G. § 3A1.2(a). "Motivated by such status" means that the offense "was motivated by the fact that the victim was a government officer or employee." Application

4

Note 3, U.S.S.G. § 3A1.2. The adjustment does not apply, for example, where the offense is instead "motivated by a personal dispute." *Id.*

Smith argues that the evidence was insufficient to show that he knew that Menton, who was in an unmarked vehicle and in plain clothes during the September 2020 incident, was a government officer; or that his assault was motivated by Menton's official status, rather than Smith's desire to evade arrest.

Because Smith did not object to this enhancement at sentencing, we review for plain error, which means Smith has to show, among other things, that any claimed error was "clear or obvious." *United States v. Esteras*, 102 F.4th 98, 104 (2d Cir. 2024).

Smith cannot meet this standard. The evidence submitted at trial and recounted in the Presentence Investigation Report showed that Smith fled—first in his vehicle and then on foot—from uniformed police officers who had activated the siren of their vehicle.[3] Taken together with the evidence that, several men, some in uniforms and some in plain clothes, continued the chase, shouted for Smith to drop his gun, and finally subdued and disarmed him, the

---

[3] Smith did not object to the factual statements contained in the Presentence Investigation Report. *See* App'x 549.

5

evidence was sufficient for the district court to apply the enhancement here. *See*

*Esteras*, 102 F.4th at 110 (explaining that facts relevant to the application of

Sentencing Guidelines need be established only by a preponderance of the

evidence); *United States v. Salim*, 549 F.3d 67, 76 (2d Cir. 2008) (no clear error in

finding that an attack was motivated by a victim's status as a corrections officer

where the attack only occurred "as a result of this status"). In short, we see no

plain error in the district court's application of the Official Victim enhancement

on this record.

   B.    **Acceptance of Responsibility, U.S.S.G. § 3E1.1**

   Sentencing Guideline § 3E1.1 provides for a two-level reduction if "the

defendant clearly demonstrates acceptance of responsibility for [the] offense."

U.S.S.G. § 3E1.1(a). The "adjustment is not intended to apply to a defendant who

puts the government to its burden of proof at trial by denying the essential

factual elements of guilt, is convicted, and only then admits guilt and expresses

remorse." Application Note 2, U.S.S.G. § 3E1.1. But going to trial "does not

automatically preclude a defendant from consideration for such a reduction." *Id.*

In "rare situations," a defendant who, for example, "goes to trial to assert and

preserve issues that do not relate to factual guilt" may still be able to show

sufficient "acceptance of responsibility" to warrant the adjustment. *Id.* In such

situations, the acceptance-of-responsibility determination "will be based primarily upon pre-trial statements and conduct." *Id.*

Smith argues that the district court erred in denying him the adjustment because at trial he did not deny his guilt as to Counts Two, Three, and Four, on which he was convicted, but, instead, only challenged Count One, on which the jury hung.

"Whether the defendant has accepted responsibility is a factual question," *United States v. Taylor*, 475 F.3d 65, 68 (2d Cir. 2007), and the defendant bears the burden of demonstrating eligibility for the adjustment, *Chu*, 714 F.3d at 747. A court's decision "not to grant a defendant a [§] 3E1.1 adjustment is entitled to great deference on review" and will "not be disturbed unless it is without foundation." *Taylor*, 475 F.3d at 68.

The district court acted within its discretion in denying the reduction here. Smith points to no "pre-trial statements [or] conduct" demonstrating clear acceptance of responsibility for the crimes of conviction, only failed plea negotiations. Application Note 2, U.S.S.G. § 3E1.1. As for trial, even if his defense there focused on the attempted murder charge, Smith still went to trial on the other charges and put the government to the burden of proving each one. *See United States v. Bodnar*, 37 F.4th 833, 846 (2d Cir. 2022) (defendant did not

7

"clearly accept" responsibility where government was "still required to offer evidence" and "fully prove" all counts charged).  Thus, the district court reasonably concluded that this was "not one of those rare cases in which a defendant ha[d] clearly demonstrated full acceptance of responsibility despite proceeding to trial."  App'x at 576.

C.    **Consideration of Conduct Underlying Count One**

In arguing that the district court improperly relied on its view that Smith intentionally discharged his gun at Menton despite the jury's hung verdict on Count One, Smith points to the following comments from the court when pronouncing his sentence:

> You know, the remorse here is not as crystal clear.  Of course you don't want to be here.  Of course you're sorry for whatever events caused you to appear before me and be charged and convicted of all of these things.  But you're clinging to the notion that, no matter what, you didn't intend to kill anybody.  You didn't intend to kill anybody.  The jury said they were hung on the issue of intent to kill, and I understand that, but this is horrible, horrific behavior and genuinely, genuinely, a person needs to be remorseful of this.

App'x at 583:18–84:1.

As Smith concedes, he did not object to these comments at sentencing and we thus review for plain error.  *See Esteras*, 102 F.4th at 104.

8

We identify no error here because Smith misreads the quoted language. The district court made clear that for sentencing purposes it was *not* resolving the question whether Smith intended to fire the gun.  Rather, it emphasized that regardless of whether Smith intended to kill anyone, the conduct for which he *was* convicted was serious.  As the court articulated, Smith "ran through the streets of Yonkers with a handgun while numerous individuals were walking on the sidewalks," App'x 581:1–3, and "each and every step taken by" Smith that day "was dangerous and serious," *id.* 584:19–21.

Thus, even if we entertained Smith's legal argument about Count One, his supporting factual assertions are not supported by the record.

D.        **Treating Guidelines as Mandatory**

Smith argues that the district court erred in treating the Sentencing Guidelines as mandatory instead of conducting an individualized assessment of the sentencing factors under 18 U.S.C. § 3553(a), and in giving too much weight to aggravating factors and too little to mitigating factors.  With respect to aggravating factors, citing studies concerning deterrence and recidivism and pointing to the cost of imprisonment, Smith argues that there is no benefit to Smith or to society in keeping him incarcerated for more than ten years.

9

Smith's first argument fails because "the law does not impose any rigorous requirement of specific articulation on sentencing judges with respect to their consideration of § 3553(a) factors." *United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008). "[W]e will not assume a failure of consideration simply because a district court fails to enumerate or discuss each § 3553(a) factor individually." *Id.* In fact, the district court discussed aggravating and mitigating § 3553(a) factors at length, including, (1) the nature and circumstances of Smith's offenses; (2) his criminal history; (3) the need for specific and general deterrence; (4) his personal history and characteristics, including his upbringing; (5) his mental and physical health challenges; (6) his child; (7) his graduation from high school despite personal obstacles and (8) the conditions of confinement during the COVID-19 pandemic. In short, contrary to Smith's argument, the record shows that the court conducted an individualized assessment and considered the § 3553(a) factors.

As to Smith's second argument, "the requirement to consider § 3553(a) factors is not synonymous with any requirement that a particular factor be given determinative or dispositive weight in the identification of the appropriate sentence." *Verkhoglyad*, 516 F.3d at 131. "The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion

10

of the sentencing judge," and, on review, we seek "to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *United States v. Solis*, 18 F.4th 395, 405 (2d Cir. 2021). Here, the district court emphasized the seriousness of Smith's offenses, including the fact that he fired his gun near bystanders and several officers; Smith's criminal history, specifically, that this was his fourth criminal conviction and he had amassed nine disciplinary incidents in jail while awaiting sentencing; and the need to deter Smith and others from assaulting law enforcement officers. We identify no abuse of discretion in the court's decision to accord these factors more weight than mitigating circumstances, including studies about deterrence, recidivism, and costs.

## II. Substantive Reasonableness

As to the substantive reasonableness of Smith's sentence, "[w]e will . . . set aside a district court's *substantive* [sentencing] determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (emphasis in original). "We do not review a sentence's substantive reasonableness to substitute our own judgment for the district court's[.]" *Davis*, 82 F.4th at 200.

Here, the district court imposed a sentence within the applicable Guidelines range, which "[i]n the overwhelming majority of cases . . . will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Alcius*, 952 F.3d 83, 88–89 (2d Cir. 2020). There is no reason to conclude otherwise in this case. Given the relevant § 3553(a) factors, the challenged Guidelines sentence fell "within the range of permissible decisions" and was thus substantively reasonable. *Cavera*, 550 F.3d at 189.

\* \* \*

We have considered Smith's remaining arguments and conclude that they are without merit. Accordingly, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court